

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-31-2006

# Watson v. Gerace

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1296

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Watson v. Gerace" (2006). *2006 Decisions.* Paper 1355.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1355

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-1296

———————

J. SCOTT WATSON;
LAURA WATSON,
                    Appellants

v.

JOSEPH GERACE;
DONNA GERACE

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil 04-cv-01779
District Judge:  The Honorable Freda L. Wolfson

———————

Submitted Under Third Circuit LAR 34.1(a)
February 10, 2006

———————

Before: SCIRICA, Chief Judge, BARRY and FISHER, Circuit Judges

———————

(Opinion Filed:March 31, 2006)

———————

OPINION

———————

BARRY, Circuit Judge

    The sellers of an apartment attempted to cancel the sale, claiming that the buyers

had failed to obtain a commitment from a lender to fund a mortgage. We agree with the District Court that the buyers had obtained the necessary commitment, and will affirm its grant of summary judgment.

## I.

Because we write primarily for the parties, we omit a discussion of facts not relevant to our disposition. J. Scott Watson and Laura Watson (the "Sellers") owned the second floor apartment in a duplex in Ocean City, New Jersey. Joseph and Donna Gerace (the "Buyers") were interested in buying the apartment. On March 3, 2004, the Buyers and Sellers executed a contract to sell the apartment for $665,000. The Buyers placed a $15,000 deposit in escrow and agreed to pay the balance with cash and a $532,000 mortgage.

The contract was a standard form prepared by Fox Real Estate ("Fox"), which represented both the Buyers and the Sellers through separate agents. Clause 6 of the contract provided, in relevant part:

> 6. MORTGAGE CONTINGENCY. The Buyer's obligation to complete this contract depends on the Buyer getting a written commitment of an established mortgage lender, or the Seller, as the case may be, to make a first mortgage loan on the property in the principal amount of $532,000.00. The buyer shall promptly apply in writing for this loan using the Buyer's best efforts and the Seller agrees to fully cooperate with the Buyer in all aspects of the financing. The Buyer shall supply all necessary information and fees asked for by the lender. The commitment must be received by the Buyer on or before March 22, 2004.
>
> The terms of the commitment must be at least as favorable to the Buyer as the following:

2

Type of Mortgage : Conventional
Amount of Loan : $532,000.00
Interest Rate : (not to exceed) 8%%
Length of Mortgage : 30 years, with monthly payments based on a 30
year payment schedule or any adjustable rate
mortgage of the Buyer's Choice.
Points :
The Buyer agrees to pay 0.00 points for a total of $0.00
The Seller agrees to pay 0 points for a total of $0.00

Should the buyer not receive the written commitment by the above date then
this Contract shall be null and void and all deposit money will be returned
to the Buyer; unless the commitment date is extended by Buyer and Seller.
The Buyer, at his option, can waive this mortgage contingency at any time.

Any mortgage commitment signed by the BUYER will satisfy this mortgage
contingency.

Clause 7 scheduled the closing for April 19 at noon. Clause 22 gave the Buyers fifteen

days to conduct an inspection and to cancel the contract by written notice if the results

proved unsatisfactory. Clause 33 was a standard integration clause. Clause 39 required

that "all notices under this Contract must be in writing [and] delivered or mailed to the

other party . . . or their Realtor or to that party's attorney."

The Buyers approached Wells Fargo Home Mortgage for the necessary financing.

On March 10, Wells Fargo issued a "Credit Approval Letter" to the Buyers, which they

signed on March 13. The letter said, "Congratulations! Your loan application has been

approved subject to the terms and conditions included on this credit approval letter. A

commitment letter will be forwarded to you by your Mortgage Specialist, once an

appraisal report has been reviewed by the Lender." The loan described in the letter, for a

$532,000 adjustable-rate 30-year mortgage, complied with the criteria set forth in the mortgage contingency clause. The letter listed a number of conditions, including: verification of the Buyers' financial status; an appraisal of the property indicating a market value of at least $665,000; and documentation approving a second mortgage of $33,250. The letter stated that these conditions could be required "as early as 5 business days prior to your scheduled closing date."

On March 23, the Sellers contacted their agent at Fox, Clay Rossiter, to inquire about the mortgage commitment. They asked Rossiter to inform the Buyers that the Sellers would consider the contract null and void unless the commitment had been received by Rossiter. On or about March 24, Rossiter faxed the Sellers a copy of the Credit Approval Letter. On March 25, the Sellers wrote to Rossiter and the Buyers' agent at Fox, Brandon Granger, that the letter was not acceptable and that the contract was null and void. They requested that Rossiter re-list the property for sale.

At the originally scheduled closing on April 19, the Buyers appeared but the Sellers did not. Instead, on the same day, the Sellers filed a complaint in the U.S. District Court for the District of New Jersey, requesting a declaratory judgment that the contract of sale was null and void. On April 22, the Buyers filed an action in the Superior Court of New Jersey for breach of contract, requesting damages and specific performance. The Sellers removed that action to the District Court, where it was consolidated with their declaratory judgment action. Both sides moved for summary judgment. The District

Court granted summary judgment for the Buyers in an order dated January 6, 2005. This timely appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same standard as the District Court. Union Pac. R.R. v. Greentree Transp. Trucking Co., 293 F.3d 120, 125 (3d Cir. 2002). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must view "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). New Jersey law applies in this diversity action. Marino v. Indus. Crating Co., 358 F.3d 241, 243 & n.2 (3d Cir. 2004).

## III.

The Credit Approval Letter satisfied the mortgage contingency clause. It was in writing, it was received by the Buyers before the deadline, and the loan it approved met the stated financial criteria. The Sellers argue that the Credit Approval Letter was not a "mortgage commitment" because it did not definitely bind Wells Fargo to fund the mortgage. While the Credit Approval Letter does refer to a separate "commitment letter," it is clear from its language that it binds Wells Fargo, subject only to specified conditions.

5

The Sellers argue that a conditional commitment cannot satisfy a mortgage contingency clause. The cases applying this reasoning, <u>Davis v. Strazza</u>, 380 N.J. Super. 476, 484-85 (App. Div. 2005), <u>McKenna v. Rosen</u>, 239 N.J. Super. 191 (App. Div. 1990), and <u>Farrell v. Janik</u>, 225 N.J. Super. 282 (Law Div. 1988), are inapposite. In those cases, the mortgage contingency clauses were conditional on the successful sale of buyers' previous homes. There, unlike here, the conditions not only had a substantial likelihood of nonfulfillment through no fault of the buyers, but actually failed before the deadline in the mortgage contingency clause. In contrast, the conditions here were both likely to be and actually were fulfilled. The second mortgage was also issued by Wells Fargo; the Credit Approval Letter refers to it as "a component of this transaction." There is no evidence in the record that there was any genuine risk that the second mortgage would not be available. The appraisal could have blocked the mortgage commitment only if it had been for a value beneath the agreed sales price.[1] The Buyers had the undisputed ability to comply with the remaining conditions, were under a good-faith duty to do so, and did comply with them.

The Sellers argue that because the second mortgage and the appraisal were outside the control of the Buyers, they render the commitment too uncertain. That distinction is unpersuasive. In <u>Malus v. Hager</u>, 312 N.J. Super. 483, 486-87 (App. Div. 1998), the

---

[1] The Sellers are, therefore, claiming that there was a serious risk that the property would be valued beneath the price they were charging for it, and that this risk should operate to their legal benefit.

Appellate Division considered a mortgage commitment conditional on the buyer's continued employment. The risk that the buyer might be terminated without cause was not within his control, but the court held the mortgage contingency satisfied. Id.

Indeed, the Buyers had sole and unfettered discretion to determine whether the mortgage contingency they received was sufficient. Davis, McKenna, and Farrell all involved *buyers'* right to invoke a mortgage contingency. New Jersey does not extend similar rights to sellers. See Friedman v. Chopra, 220 N.J. Super. 546, 549 (App. Div. 1987) (holding buyers allowed to proceed with smaller mortgage than specified in mortgage contingency clause); Gross v. Lasko, 338 N.J. Super. 476, 485 (App. Div. 2001) (holding buyers allowed to proceed without mortgage commitment by waiving mortgage contingency). The contract states: "Any mortgage commitment signed by the BUYER will satisfy this mortgage contingency." The Buyers found the Credit Approval Letter sufficient and signed it. The Buyers had the option to waive the mortgage commitment entirely, strongly suggesting that they could waive it to whatever extent the mortgage commitment was insufficient.[2] See Friedman, 220 N.J. Super. at 549 ("Where sellers agree that purchasers may close with no mortgage, they cannot complain if the purchasers choose to close with a mortgage in an amount less than the amount stated in the mortgage contingency clause."). Further, the mortgage contingency clause makes the mortgage

_____

[2] The Buyers argue in the alternative that they actually waived the mortgage contingency. Because we agree with them that the mortgage commitment they received from Wells Fargo was sufficient, we do not reach this issue.

7

commitment a condition precedent to the Buyer's "obligation to complete this contract," indicating that the mortgage contingency clause operates for the Buyers' benefit.[3]

Finally, there is no merit to the Sellers' argument that the Buyers failed to provide written notice of the mortgage commitment by the March 22 deadline because they were not required to do so. See Schultz v. Topakyan, 193 N.J. Super. 550, 552-53 (App. Div. 1984) ("time limit for obtaining the mortgage commitment [did not] require[] notice within the same period"); Gross, 338 N.J. Super. at 484-85 ("There is no written notice requirement [for waiving the mortgage contingency], and we will not imply one . . . ."). While the contract requires any "notices" to be in writing, the mortgage contingency clause does not trigger any notice requirement in the first place. Where notice is required under the contract, it is explicitly mentioned, as in the inspection clause. In any event, the Sellers had actual notice of the commitment by March 24 and had unequivocally repudiated the contract by March 25. The Buyers did all they were required to do under the circumstances.

The Buyers received a satisfactory mortgage commitment. They complied with their obligations under the contract. The Sellers were in breach of the contract when they

---

[3] The Sellers argue that a mortgage contingency deadline also protects sellers because they can return the property to the market. They are half correct. The deadline protects them only by putting a time limit on the exercise of the buyer's right to cancel the contract for lack of financing. The underlying mortgage contingency itself primarily protects buyers. See Friedman, 220 N.J. Super. at 549.

refused to close.  We will affirm the judgment of the District Court.